**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARLOS ENRIQUE ESPADA HERNANDEZ,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF ADELANTO ICE PROCESSING CENTER, ET AL.,<br><br>Respondents. | Case No. 5:26-cv-02231-AJR<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE ON PRIOR CONDITIONS OF RELEASE** |

**I.**

**INTRODUCTION & PROCEDURAL HISTORY**

On April 29, 2026, Petitioner Carlos Enrique Espada Hernandez ("Petitioner"), an immigration detainee represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention at the Adelanto ICE Processing Center. (Dkt. 1 at 2-3.) On May 6, 2026, Respondents Warden of Adelanto ICE Processing Center, Markwayne Mullin, Todd Lyons, Todd Blanche, and Andre Quinones, all sued in their official capacities (collectively, "Respondents"), filed an Answer to the Petition (the "Answer"). (Dkt. 7.) On May 9, 2026, Petitioner filed a Reply to the Answer (the "Reply"). (Dkt. 8.)

The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 2, 5.) For the reasons set for the below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody pursuant to the terms of his prior conditions of release.

## II.

## FACTUAL BACKGROUND

The following summary of relevant facts is based on the facts alleged in the Petition. (Dkt. 1.) Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so. (Dkt. 7.) Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a native and citizen of Guatemala. (Dkt. 1 at 4.) Petitioner has three biological children, all of whom are United States citizens. (Id.) Petitioner has resided with his family in Los Angeles for many years. (Id.) Petitioner's criminal history does not include any crime involving moral turpitude. (Id. at 9.) Petitioner has a conviction for a misdemeanor violation of California Vehicle Code § 23152(b), driving under the influence. (Id.) On August 26, 2025, Petitioner was arrested by immigration authorities. (Id. at 4.) Petitioner has been detained at the Adelanto ICE Processing Center since that time. (Id.)

Petitioner is currently pending removal proceedings before an immigration judge and is charged with having entered the United States without inspection. (Id. at 2.) Petitioner is seeking relief before the immigration court in the form of Cancellation of Removal 42B and his next hearing was scheduled for May 4, 2026. (Id.)

The parties agree that Petitioner received an initial bond hearing before an

2

immigration judge on January 12, 2026.  (Dkt. 7 at 5; Dkt. 7-1 at 3-5; Dkt. 8 at 3.) This bond hearing was provided pursuant to a temporary restraining order issued in a prior habeas action.  See Hernandez v. Warden, EDCV 25-3217-JWH-AJR.[1]  This initial bond hearing was conducted pursuant to 8 U.S.C. § 1226(a) with the burden of proof placed on Petitioner.  (Dkt. 7 at 5; Dkt 7-1 at 3-4.)  The Immigration Judge concluded that Petitioner had failed to meet his burden to demonstrate that his release would not pose a danger to the community and, in the alternative, that if released, Petitioner would not pose a flight risk that could be otherwise mitigated by alternatives to detention or any amount of bond.  (Dkt. 7-1 at 3.)  The Immigration Judge relied on Petitioner's testimony and evidence demonstrating that:  (1) Petitioner has a conviction for driving under the influence without a driver's license; (2) Petitioner attempted to enter the United States twice; and (3) Petitioner does not have authorization to work in the United States, but nonetheless has operated a cleaning business for the last three years and previously worked as a painter for around 18 years.  (Id.)

Based on the aforementioned testimony and evidence, the Immigration Judge concluded that Petitioner had not met his burden to show that he would not pose a danger to the community because the crime of driving under the influence is extremely dangerous and the very nature of the crime presents a serious risk of physical injury to others.  (Id. at 3-4.)  Also based on the aforementioned testimony and evidence, the Immigration Judge concluded that Petitioner has not met his burden to show that would not pose a flight risk because Petitioner's eligibility for relief was speculative and Petitioner's immigration history demonstrated a pattern of circumventing lawful, safe, and orderly immigration procedures.  (Id. at 4.)  The Immigration Judge's opinion does not specifically discuss or otherwise appear to

---

[1] The prior habeas action was voluntarily dismissed as moot after Petitioner received the bond hearing pursuant to the temporary restraining order.  See Hernandez v. Warden, EDCV 25-3217-JWH-AJR, Dkts. 14, 15.

consider any alternative to detention such as conditions of release or bond.  (Id. at 3-4.)

On March 2, 2026, Petitioner received a second bond hearing pursuant to Rodriguez v. Robbins.  (Dkt. 1 at 4; Dkt. 7 at 5.)  At this second bond hearing, the burden of proof was placed on Respondents.  (Dkt. 7 at 5; Dkt. 7-1 at 7-8.)  The Immigration Judge characterized the hearing as a request for custody redetermination pursuant to 8 C.F.R. § 1236.  (Dkt. 7-1 at 7.)  The Immigration Judge stated that "[a]fter full consideration of the evidence presented, the [Petitioner's] request for a change in custody status is hereby ordered: [¶] Denied, because [¶] Flight risk and danger to the community."  (Id.)  The Immigration Judge's opinion does not include any other explanation, analysis, or findings.  (Id.)  Therefore, the Court presumes that the Immigration Judge relied on the same testimony and evidence described above from the initial bond hearing on January 12, 2026.

### III.
### SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief (Count One) alleges that the Immigration Judge at the March 2, 2026 bond hearing violated the Administrative Procedure Act ("APA") by denying bond based on facts that do not establish that Petitioner is a flight risk or a danger to the community contrary to the holding of In re Patel, Dec. 666, 666–67 (BIA 1976).  (Dkt. 1 at 7-9.)  Petitioner's second claim for relief (Count Two) similarly alleges that the Immigration Judge at the March 2, 2206 bond hearing violated the APA by relying on facts that do not establish that Petitioner is a flight risk or a danger to the community contrary to the holding of In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006).  (Id. at 10-11.)  Petitioner's third claim for relief (Count Three) alleges that the Immigration Judge at the March 2, 2026 bond hearing violated the APA by failing to set a reasonable bond.  (Id. at 11.)  Petitioner seeks

4

immediate release and an order enjoining Respondents from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter in which he is determined to be a flight risk or a danger to the community in compliance with governing law and due process. (Id. at 12.)  Alternatively, Petitioner seeks an order compelling his release on a bond of $1,500, or a new bond hearing at which the immigration judge complies with governing law and due process. (Id.)  Finally, Petitioner seeks an award of reasonable attorneys' fees and costs under the Equal Access to Justice Act ("EAJA").  (Id.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two

5

types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights."  Regino, 133 F.4th at 959-60.  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests."  Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest."  Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted).  With that careful description in mind, courts must then decide whether the asserted interest is

6

"objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

### A.      The Petition Is Not Moot.

Respondents contend that the Petition is moot to "[t]he extent that the Petition seeks to challenge [Petitioner's] re-detention." (Dkt. 7 at 8.)  While the Court agrees that a challenge to Petitioner's re-detention would be moot because that issue was already raised in a prior habeas action, Hernandez v. Warden, EDCV 25-3217-JWH-AJR, the Petition very clearly does not challenge Petitioner's re-detention. Indeed, the Petition does not discuss Petitioner's re-detention at all and instead focuses on alleged violations of the APA and due process based on the March 2, 2026 bond hearing. (Dkt. 1 at 7-11.)  Since the March 2, 2026 bond hearing did not occur until several months after Petitioner's prior habeas action was dismissed, it is obvious that the prior habeas action did not address or moot claims related to this second bond hearing.  Moreover, the Court notes that the March 2, 2026 bond hearing was provided pursuant to Rodriguez v. Robbins, not the temporary restraining order in the prior habeas action. (Dkt. 1 at 4; Dkt. 7 at 5.)

For context, Rodriguez is a class action covering "All non-citizens within the Central District of California who: (1) Are or were detained for longer than six months pursuant to one of the general immigration detention statutes pending completion of removal proceedings, including judicial review; (2) Are not and have not been detained pursuant to a national security detention statute; and (3) Have not been afforded a hearing to determine whether their detention is justified." Rodriguez v. Holder, 2013 WL 5229795, at *1 (C.D. Cal. Aug. 6, 2013), aff'd in

part, rev'd in part sub nom. Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), rev'd sub nom. Jennings v. Rodriguez, 138 S. Ct. 830 (2018); Rodriguez v. Marin, 2020 WL 13348414, at *1 (C.D. Cal. Mar. 9, 2020) (affirming that the preliminary injunction in the Rodriguez class action continues to apply to individuals detained in the Central District of California under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c)); Rodriguez v. Marin, 2020 WL 13724475, at *1 (C.D. Cal. May 28, 2020) (denying motion to vacate preliminary injunction and decertify the class).[2] "Under the preliminary injunction, at the conclusion of each bond hearing, the Immigration Judge ('IJ') shall release each Subclass member on reasonable conditions of supervision, including electronic monitoring if necessary, unless the government shows by clear and convincing evidence that continued detention is justified based on his or her danger to the community or risk of flight." Rodriguez v. Robbins, 715 F.3d 1127, 1131 (9th Cir. 2013) (internal quotation marks omitted).

Thus, the March 2, 2026 bond hearing was provided pursuant to the injunction entered in Rodriguez because Petitioner had been in custody for longer than six months, not Petitioner's prior habeas action. Accordingly, the Court concludes that the Petition is not moot.

**B.    The Court Has Jurisdiction To Review The Immigration Judge's March 2, 2026 Denial Of Bond For Abuse Of Discretion.**

Respondents contend that this Court lacks jurisdiction to review the Immigration Judge's March 2, 2026 denial of bond because bond determinations are committed to the discretion of the Attorney General. (Dkt. 7 at 9.) However, the Supreme Court has clarified the boundaries of judicial review in the immigration

---

[2] On October 19, 2021, the Ninth Circuit reversed the district court and remanded with instruction to vacate the injunction. See Rodriguez v. Barr, 2021 WL 4871067, at *1 (9th Cir. Oct. 19, 2021). However, the mandate has not issued because the case is currently pending a petition for panel rehearing or rehearing *en banc*, which is currently due on May 22, 2026. (See Ninth Circuit Case No. 20-55770, Dkt. 79.)

context by explaining that "[t]he application of a statutory legal standard . . . to an established set of facts is a quintessential mixed question of law and fact" and is reviewable.  Wilkinson v. Garland, 601 U.S. 209, 212 (2024).  Following Wilkinson, the Ninth Circuit has held that an immigration judge's determination that a detainee poses a danger to the community or a flight risk is a mixed question of law that may be reviewed for abuse of discretion.  See Martinez v. Clark, 124 F.4th 775, 783 (9th Cir. 2024) ("Wilkinson compels the conclusion that application of the 'dangerousness' standard is a reviewable mixed question."); see also C.A.R.V. v. Wofford, 2026 WL 241823, at *3 (E.D. Cal. Jan. 29, 2026) ("In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an 'abuse of discretion' standard.").

Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the immigration judge "applied the correct legal standard."  Martinez, 124 F.4th at 785 (internal quotation marks omitted).  Thus, the Court's review "is limited to whether the IJ's decision reflects clear legal error or is unsupported by sufficient evidence."  C.A.R.V., 2026 WL 241823, at *3 (internal quotation marks omitted); accord Kumar v. Noem, 2026 WL 983129, at *2 (E.D. Cal. Apr. 13, 2026); Hilario Pankim v. Barr, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020).  Thus, the Court concludes that it has jurisdiction to review the Immigration Judge's March 2, 2026 denial of bond for abuse of discretion.

**C.** **The Court Finds It Appropriate To Waive The Prudential Administrative Exhaustion Requirement.**

Respondents next contend that Petitioner must exhaust his administrative remedies by completing the appellate process through the Board of Immigration Appeals before this Court can review the Immigration Judge's March 2, 2026 denial of bond.  (Dkt. 7 at 12-14.)  However, in the context of a habeas petition, administrative exhaustion is merely prudential, and not mandatory.  See Y.S.G. v. Andrews, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025) ("The federal habeas

9

statute under which this case was filed does not require exhaustion of administrative remedies.").  Indeed, the exhaustion requirement may be waived "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void."  Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (internal quotation marks omitted).  Petitioner bears the burden of showing that an excuse for exhaustion applies.  See Leonardo v. Crawford, 646 F.3d 1157, 1161 (9th Cir. 2011).

Petitioner contends that exhaustion should be waived because administrative remedies are inadequate and exhaustion would be futile.  (Dkt. 1 at 5.)  Specifically, Petitioner alleges that "[o]f the 39 Board of Immigration Appeals decisions issued in the months May through August 2025 in cases where the noncitizen appealed Adelanto immigration court bond decisions, none of those cases overturned an immigration judge's finding that the noncitizen was a danger to others or a flight risk."  (Id.)  "Of the six decisions which sustained the appeal and remanded the case, all were due to procedural errors made by the immigration judge."  (Id.)  Petitioner further contends that "precedent decisions issued by the Board of Immigration Appeals under the Trump Administration further indicate that it is futile to require prudential exhaustion in this case."  (Id. at 6.)  Petitioner cites to a March 30, 2026 report issued by the National Public Radio finding that last year, 97% of Board published decision were in favor of the Department of Homeland Security.  (Id.)  Finally, Petitioner contends that he will suffer irreparable injury waiting for an appeal to be decided by the Board because the processing time for appeals currently ranges from between roughly two to ten months.  (Id.)

Respondents failed to meaningfully respond to Petitioner's arguments that exhaustion would be futile or inadequate because he would suffer irreparable injury waiting for a decision.  Indeed, Respondents simply assert, without explanation or citation to authority, as follows: "That Petitioner remains in custody following his

10

bond hearings is not irreparable harm that excuses exhaustion." (Dkt. 7 at 14.) Instead of meaningfully addressing Petitioner's arguments supporting an excuse for exhaustion, Respondents contend that prudential exhaustion should be required because the Board of Immigration Appeals has subject matter expertise in reviewing individual immigration bond decisions, relaxation of the exhaustion requirement would encourage the deliberate bypass of the administrative scheme, and administrative review is likely to allow the agency to correct its own mistakes and preclude the need for judicial review. (Id. at 12-14.) While these arguments support the application of prudential exhaustion in the first instance, they do not address Petitioner's specific arguments that an excuse for exhaustion applies. See Hernandez, 872 F.3d at 988 (setting forth factors to consider whether prudential exhaustion may be required in the first instance).

Thus, the Court concludes that Petitioner has satisfied his burden to show that he will suffer irreparable harm from remaining in custody for as long as ten months waiting for the Board of Immigration Appeals to rule on his appeal. See, e.g., Rodriguez Cabrera v. Mattos, 808 F. Supp. 3d 1159, 1176 (D. Nev. 2025) ("Moreover, requiring Petitioner to be subjected to unlawful detention pending the BIA's decision would cause irreparable harm, which is a separate and independent basis to waive exhaustion under Laing."); Doe v. Becerra, 787 F. Supp. 3d 1083, 1095 (E.D. Cal. 2025) ("This violation of Petitioner's due process rights is sufficient to satisfy the irreparable harm requirement."); Y.S.G., 2025 WL 2979309, at *7 ("[P]etitioner has adequately demonstrated that irreparable injury will result if he has to await the outcome of his BIA appeal."). Accordingly, the Court concludes that it is appropriate to waive the prudential administrative exhaustion requirement based on Petitioner's unrebutted showing of irreparable harm. See Ligario Hernandez v. Mullin, 2026 WL 846037, at *8 (C.D. Cal. Mar. 24, 2026) ("[R]equiring Petitioner to be detained in alleged violation of his constitutional right to due process, pending the BIA's decision would cause irreparable harm, which

11

alone provides a sufficient basis to waive exhaustion under Laing.  Respondents' argument to the contrary merely asserts, without citation to authority, that continued detention does not constitute irreparable harm." (citation omitted)).

Respondents rely on a recent opinion in Nadales v. Semaia, EDCV 26-00101-FWS-MAR, Dkt. 27 (April 27, 2026), which dismissed a petition without prejudice for failure to exhaust administrative remedies.  (Dkt. 7 at 14.)  The Nadales court "d[id] not find in the record sufficient reason to waive the exhaustion requirement." Nadales, EDCV 26-00101-FWS-MAR, Dkt. 27 at 6.  However, the rationale in Nadales is distinguishable here because Petitioner has alleged specific facts about the length of delay in obtaining review by the Board of Immigration Appeals.  (Dkt. 1 at 5.)  Respondents declined to respond to Petitioner's factual allegations and therefore Petitioner's showing of irreparable harm stands unrebutted in the record. (Dkt. 7 at 12-14.)  Nadales is also distinguishable because the March 2, 2026 bond hearing at issue here was held pursuant to the injunction entered in the Rodriguez class action and therefore this Court has an additional interest in ensuring compliance with court orders.  See, e.g., C.A.R.V., 2026 WL 241823, at *4 (noting that "some courts in the Ninth Circuit have determined that administrative exhaustion is not required to enforce a prior order").  Accordingly, the Court will now analyze whether the Immigration Judge's March 2, 2026 denial of bond constitutes an abuse of discretion.

**D.** **The Immigration Judge's March 2, 2026 Denial Of Bond Was An Abuse of Discretion.**

The Ninth Circuit has explained that when assessing whether an alien "is a danger to the community or a risk of flight," an immigration judge may consider the following factors:

(1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in

12

the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

Martinez, 124 F.4th at 783 (internal quotation marks omitted).  An immigration judge has "broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative."  Id. at 784.

However, the Ninth Circuit has also explained that an immigration judge "abuses its discretion when it fails to consider and address in its entirety the evidence submitted by a petitioner and to issue a decision that fully explains the reasons for [its decision]."  Franco-Rosendo v. Gonzales, 454 F.3d 965, 966 (9th Cir. 2006) (internal quotation marks omitted); see also Barrera-Leyva v. Immigr. and Naturalization Serv., 653 F.2d 379, 380 (9th Cir. 1981) (stating that the immigration judge abused its discretion by "fail[ing] to consider all of the relevant factors").  Here, the March 2, 2026 opinion fails to include any discussion of the evidence submitted by Petitioner or explanation of the reasons for the Immigration Judge's decision. (Dkt. 7-1 at 7.)  Indeed, the opinion characterizes the hearing as a request for custody redetermination pursuant to 8 C.F.R. § 1236 and states that "[a]fter full consideration of the evidence presented, the [Petitioner's] request for a change in custody status is hereby ordered: [¶] Denied, because [¶] Flight risk and danger to the community." (Id.)  The opinion does not include any other explanation, analysis, or findings. (Id.)

Therefore, it is not even clear that the Immigration Judge complied with the Rodriguez injunction by placing the burden of proof on Respondents or requiring proof by clear and convincing evidence. See, e.g., Martinez, 124 F.4th at 785

13

(explaining that application of an incorrect legal standard is clear error).  Indeed, the Board of Immigration Appeals has held that in the context of custody redetermination hearings, "[t]he burden is on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond." In Re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006).  Therefore, the Immigration Judge's characterization of the hearing as a request for custody redetermination pursuant to 8 C.F.R. § 1236 suggests that the Immigration Judge did not place the burden of proof by clear and convincing evidence on Respondents.

Regardless, even assuming that the Immigration Judge complied with the Rodriguez injunction by placing the burden of proof on Respondents by clear and convincing evidence, the March 2, 2026 bond denial still constitutes an abuse of discretion because the Immigration Judge failed to include any discussion of the evidence submitted by Petitioner or explanation of the reasons for the Immigration Judge's decision.  See, e.g., Miri v. Bondi, 2026 WL 622302, at *9 (C.D. Cal. Mar. 5, 2026) (holding that immigration judge abused its discretion in denying bond because the judge "did not explain the reasons for denying Miri's bond," and "did not describe which Martinez factors were considered, if any, or what evidence was relied on"); Vasquez Lopez v. Hernandez, 2026 WL 984151, at *3 (W.D. Wash. Apr. 13, 2026) ("The Court is left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors. The Court must conclude that the immigration judge failed to do so, which constitutes an abuse of discretion."); Kumar, 2026 WL 983129, at *2 ("The IJ's failure to provide any basis for the decision that Petitioner was a risk of flight, beyond a conclusory statement that DHS had met its burden, was thus an abuse of discretion."); Lopez Santana v. Marin, 2026 WL 1179732, at *2 (E.D. Cal. Apr. 30, 2026) ("The IJ's failure to provide any explanation for the bond denial, including addressing the evidence submitted and the factors that the IJ considered, was an abuse of discretion.").

Given the lack of analysis or explanation in the March 2, 2026 opinion, the

14

Court presumes that the Immigration Judge relied on the same testimony and evidence described in the initial bond hearing on January 12, 2026. (Dkt. 7-1 at 3-4.) However, the January 12, 2026 opinion relies on Petitioner's misdemeanor conviction for driving under the influence, the fact that Petitioner attempted to enter the United States twice, and the fact that Petitioner worked in the United States without authorization, but fails to consider any mitigating facts such as the length of time that Petitioner has lived in the United States, his stable residence, or his family ties that include three biological children who are United States citizens. (Id.; Dkt. 1 at 4); see, e.g., Soriano v. Hernandez, 2026 WL 969764, at *5 (W.D. Wash. Apr. 10, 2026) ("The Court concludes the IJ abused his discretion when he denied Petitioner's bond request. Here, the IJ relied on Petitioner's immigration history, employment history, and the potential strength of Petitioner's claims for relief from removal to support a finding of flight risk without explaining why those factors established flight risk or how they outweighed the significant evidence showing Petitioner is fixed and stable with his family in his community."); see also Barrera-Leyva, 653 F.2d at 380 (stating that the immigration judge abused its discretion by "fail[ing] to consider all of the relevant factors").

Moreover, the January 12, 2026 opinion relies exclusively on Petitioner's misdemeanor conviction for driving under the influence to support the finding of danger to the community. (Dkt. 7-1 at 4-8.) However, the crime of driving under the influence does not qualify as an aggravated felony or crime involving moral turpitude requiring mandatory detention under the Immigration and Nationality Act. See Montiel-Barraza v. I.N.S., 275 F.3d 1178, 1180 (9th Cir. 2002) (not aggravated felony); Marmolejo-Campos v. Holder, 558 F.3d 903, 913 (9th Cir. 2009) (not crime involving moral turpitude). Thus, the Immigration Judge's exclusive reliance on Petitioner's misdemeanor conviction for driving under the influence to conclude that Petitioner posed such a danger to the community that he could not be released on any condition constitutes a categorical denial of bond to any alien with such a

15

conviction and violates Petitioner's right to an individualized determination under the Rodriguez injunction.  See Rodriguez, 715 F.3d at 1139 ("Rather, the injunction requires *individualized* decision-making—in the form of bond hearings that conform to the procedural requirements set forth in Singh[ v. Holder, 638 F.3d 1196 (9th Cir. 2011)].").

The January 12, 2026 opinion also concluded that Petitioner posed a flight risk based on the findings that Petitioner's eligibility for relief was speculative and that Petitioner's immigration history reflected a pattern of circumventing lawful, safe, and orderly immigration procedures.  (Dkt. 7-1 at 4.)  However, the Immigration Judge failed to explain why Petitioner's eligibility for relief was speculative and never addressed Petitioner's pending request for Cancellation of Removal 42B.  (Id.); see Soriano, 2026 WL 969764, at *5 ("While it might be rational to draw such conclusion based on the specific facts presented in a particular case, the IJ did not explain how the relative strengths or weaknesses of Petitioner's claims for relief outweighed the specific circumstances presented in this case."). Regardless, even assuming Petitioner's eligibility for relief were speculative, this finding alone would not be sufficient to meet Respondents' burden of proof by clear and convincing evidence.  See, e.g., Kumar, 2026 WL 983129, at *3 ("But, at a minimum, it cannot be said that the limited availability of relief is evidence of flight that remotely approaches the clear and convincing standard the IJ purported to apply.").

The Immigration Judge similarly failed to explain why Petitioner's prior immigration history reflected a pattern of circumventing lawful, safe, and orderly immigration procedures such that Petitioner posed a risk of flight that could not be mitigated by conditions of release or bond.  (Dkt. 7-1 at 4); Soriano, 2026 WL 969764, at *5 ("The IJ provides no explanation why an unauthorized reentry into the United States 25 years ago would motivate Petitioner to uproot his family from his community (or abandon his family) to avoid immigration officials and flee.

16

Concluding that an unlawful entry from 25 years ago, without any criminal history or any history of failing to appear, automatically weighs in favor of finding flight risk lacks any objective rationale.").  Indeed, the only facts related to Petitioner's immigration history in the January 12, 2026 opinion are that Petitioner "testified that he has attempted to enter the United States twice" and that "[o]n the first occasion he was awarded relief in the form of a pre-conclusion voluntary department from a judge." (Dkt. 7-1 at 3.)  These bare facts related to Petitioner's immigration history, without more, cannot meet the clear and convincing standard to show that Petitioner poses such a flight risk that no condition of release or bond could be imposed.  See, e.g., N.A. v. Warden, Adelanto Det. Facility, 2026 WL 734587, at *9 (C.D. Cal. Feb. 20, 2026) ("In sum, given Petitioner's significant connections in the United States, his incentive to appear for ongoing proceedings to determine if he will be granted asylum or other relief, and the availability of conditions of release to mitigate any risk of flight, the IJ abused its discretion by finding Petitioner a flight risk by 'clear and convincing' evidence."), report and recommendation adopted, 2026 WL 734585 (C.D. Cal. Mar. 12, 2026).

Finally, the Court notes that both the January 12, 2026 and March 2, 2026 opinions completely failed to address any alternative to detention such as conditions of release or bond.  (Dkt. 7-1 at 3-4, 7.)  This failure to consider alternatives to detention also violates the terms of the Rodriguez injunction.  See Rodriguez, 715 F.3d at 1139.  Thus, the Court concludes that the Immigration Judge's March 2, 2026 denial of bond was an abuse of discretion because the Immigration Judge failed to consider and address in its entirety the evidence submitted by Petitioner and explain the reasons for the decision.  See Franco-Rosendo, 454 F.3d at 966; Barrera-Leyva, 653 F.2d at 380.  Accordingly, the Court will now turn to the question of the appropriate remedy.

**E.**      **The Appropriate Remedy Is Release On Prior Conditions.**

The federal habeas corpus statute "does not limit the relief that may be

17

granted to discharge of the applicant from physical custody." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted." Id. "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243); see also Brown v. Davenport, 596 U.S. 118, 127-28 (2022) (explaining that district courts have equitable discretion, "as law and justice require," for remedying unlawful detention in habeas proceedings). Indeed, "[f]ederal courts have a fair amount of flexibility in fashioning specific habeas relief." Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005).

Because the March 2, 2026 bond hearing was held pursuant to the Rodriguez injunction, (Dkt. 1 at 4; Dkt. 7 at 5), the Court turns to the language of the injunction for guidance on the appropriate remedy. "Under the preliminary injunction, at the conclusion of each bond hearing, the Immigration Judge ('IJ') shall release each Subclass member on reasonable conditions of supervision, including electronic monitoring if necessary, unless the government shows by clear and convincing evidence that continued detention is justified based on his or her danger to the community or risk of flight." Rodriguez, 715 F.3d at 1131 (internal quotation marks omitted). As set forth above, the Immigration Judge's March 2, 2026 denial of bond did not comply with Respondents' obligations under Rodriguez and therefore Respondents have not met their burden to show by clear and convincing evidence that continued detention is justified. Therefore, under the plain terms of the Rodriguez injunction, Petitioner must now be released on his prior conditions of supervision. See id.; see also Soriano, 2026 WL 969764, at *6 ("Under the circumstances, the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy.").

Moreover, the Court finds it necessary to enjoin Respondents from re-detaining Petitioner without first providing Petitioner with individualized notice

18

describing the change in circumstances necessitating his arrest and/or detention, and a pre-deprivation bond hearing before an immigration judge at which Respondents will bear the burden of proof.  See Soriano, 2026 WL 969764, at *6 ("Petitioner SHALL not be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge.").  Petitioner shall not be re-detained unless Respondents demonstrate by clear and convincing evidence at the pre-deprivation hearing that Petitioner is a flight risk or a danger to the community, and that there is no condition or combination of conditions that will reasonably assure Petitioner's appearance and/or the safety of any other person in the community (for the avoidance of doubt, the immigration judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the foregoing standard). This additional relief is necessary to provide complete relief from unlawful detention because otherwise Petitioner would be subject to immediate arbitrary re-detention.  See, e.g., Esquivel Pacheco v. LaRose, 2026 WL 242300, at *7 (S.D. Cal. Jan. 29, 2026) ("Consistent with many other courts, the Court enjoins any further detention of Petitioner unless the government first—prior to any detention— justifies the deprivation of his liberty interest at a bond hearing.").

Finally, the Court notes that Petitioner seeks an award of reasonable attorney's fees and costs under the EAJA.  (Dkt. 1 at 12.)  The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action.  See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

\\

## VI.

## CONCLUSION

Respondents shall immediately release Petitioner from custody pursuant to the same conditions of release in place at the time of his re-detention on August 26, 2025. Respondents are enjoined from re-detaining Petitioner without first providing Petitioner with individualized notice describing the change in circumstances necessitating his arrest and/or detention, and a pre-deprivation bond hearing before an immigration judge at which Respondents will bear the burden of proof. Petitioner shall not be detained unless Respondents demonstrate by clear and convincing evidence at the pre-deprivation hearing that Petitioner is a flight risk or a danger to the community, and that there are no conditions or combination of conditions that will reasonably assure Petitioner's appearance and/or the safety of any other person in the community (for the avoidance of doubt, the immigration judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the foregoing standard). **Respondents shall file a notice of compliance within twenty-four hours of the entry of Judgment.**

IT IS SO ORDERED.

DATED:  May 11, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

20